UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS CORNELL JACKSON, #748757,

    Plaintiff,                            Hon. Robert J. Jonker

v.                                            Case No. 1:21-cv-1060

UNKNOWN LABARE, et. al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 59). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted.

**BACKGROUND**

Plaintiff initiated this action against the State of Michigan, the Michigan Department of Corrections (MDOC), and three MDOC employees, John Davids, Unknown Labare, and Unknown Oversmith. (ECF No. 1). At this juncture, the only remaining claim is that, on or about December 1, 2021, Labare instructed a nurse to deny Plaintiff medication to treat his dry-eye condition in violation of his Eighth Amendment rights. (ECF No. 1 at PageID.8; ECF No. 11 at PageID.204-06). Defendant Labare now moves for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff has responded to

-1-

Defendant's motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant

probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his

control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

It is well understood that a prisoner must completely exhaust his administrative remedies before initiating legal action. *See, e.g., Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("[t]he Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in federal court"). Defendant Labare has presented evidence that while Plaintiff pursued a grievance

through all three steps of the MDOC's prison grievance procedure, Plaintiff initiated the present action before completing the prison grievance process.

On December 7, 2021, Plaintiff filed a grievance against Defendant Labare alleging that Labare instructed a nurse to withhold from Plaintiff medication to treat his dry-eye condition. (ECF No. 60 at PageID.774). Plaintiff initiated the present action only nine days later, before he even received a response to his Step I grievance. Plaintiff pursued this grievance through all three steps of the prison grievance process. (ECF No. 60 at PageID.771-75). But, because Plaintiff did not complete the grievance process before initiating the present action, this grievance does not exhaust Plaintiff's remaining claim against Defendant Labare. Defendant has presented evidence that Plaintiff did not pursue, prior to initiating the present action, any other grievance concerning the events underlying Plaintiff's remaining claim against Defendant Labare. (ECF No. 60 at PageID.677-795).

In response, Plaintiff fails to address the merits of Defendant's motion. Rather, Plaintiff asserts that in January 2020, his placement on modified grievance access was extended. Plaintiff argues that he was not provided proper notice of this decision. Plaintiff fails to explain how these circumstances, which occurred almost two years before the events giving rise to Plaintiff's remaining claim, are relevant to the resolution of the present motion. Plaintiff further asserts that his response to Defendant's motion incorporates the verified allegations in his initial complaint.

The allegations in Plaintiff's complaint, however, do not advance Plaintiff's cause. In his complaint, Plaintiff alleges that he requested a Step I grievance form "regarding every claim within this complaint." (ECF No. 1 at PageID.12). As noted above, Plaintiff was provided a Step I grievance which he submitted eight days after the events giving rise to his remaining claim. (ECF No. 60 at PageID.774). This is not a circumstance in which Plaintiff's request for a Step I grievance was unnecessarily or unreasonably denied, thus making the grievance process unavailable. Rather, Plaintiff simply refused to wait until the grievance process was completed before filing the present action. In fact, as also noted above, Plaintiff filed the present action before even receiving a response to his Step I grievance.

In sum, Defendant has presented evidence which satisfies her burden on the question of exhaustion. Plaintiff has failed to present evidence creating a genuine factual dispute on this issue. Accordingly, the undersigned recommends that Defendant's motion be granted, Plaintiff's remaining claim against Defendant Labare dismissed without prejudice, and this action terminated.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 59) be granted. The undersigned further recommends that Plaintiff's claim that Defendant Labare, on or about December 1, 2021, instructed a nurse to deny Plaintiff medication to treat his dry-eye condition be dismissed without prejudice for failure to exhaust administrative remedies and this

action terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                            Respectfully submitted,

Date: January 17, 2023                      /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge